UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Margaret Sokolnicki,

    Plaintiff,

v.                                                             Honorable Sean F. Cox

Cingular Wireless, L.L.C.,                    Case No. 05-74110

    Defendant.
_____/

**OPINION & ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Margaret Sokolnicki ("Plaintiff") filed this age and sex discrimination action against her former employer, Defendant Cingular Wireless, L.L.C. ("Defendant" or "Cingular"),[1] on October 26, 2007. The matter is currently before the Court on Defendant's Motion to Dismiss and/or for Summary Judgment. The issues have been fully briefed and the Court heard oral argument on May 3, 2007. For the reasons that follow, Defendant's motion shall be **GRANTED** and this action shall be dismissed with prejudice.

BACKGROUND

Plaintiff filed this action on October 26, 2007, asserting the following claims: 1) "Violation of ADEA (Wrongful Discharge)" (Count I); "Violation of ELCRA – Age Discrimination (Wrongful Discharge)" (Count II); "Violation of ELCRA – Sex Discrimination (Wrongful Discharge)" (Count III); and "Intentional Infliction of Emotional Distress" (Count

---

[1]Defendant asserts, and Plaintiff does not dispute, that Plaintiff was actually employed by Cingular Wireless Employee Services, LLC, a subsidiary of Cingular Wireless LLC and that the proper defendant in this action is actually Cingular Wireless Employee Services, LLC.

1

IV).

Plaintiff, however, subsequently stipulated to the dismissal of her sex discrimination claim (Count III) and that claim has been dismissed with prejudice. (*See* 2/19/07 Stipulation and Order Dismissing Sex Discrimination Claim with Prejudice). Thus, only Counts I, II and IV remain.

This Court's practice guidelines for motions for summary judgment provide, in pertinent part, that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. The Statement shall include all necessary material facts that, if undisputed, would result in summary judgment for the movant.
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.
> . . . .
>
> e. Facts stated in the Statement of Material Facts Not in Dispute and Counter-Statement of Disputed Facts shall be supported with appropriate citations to the record, including but not limited to the pleadings, interrogatories, admissions, depositions, affidavits and documentary exhibits. Citations to the record must be specific, i.e., cite to a discrete page or portion of deposition testimony or page(s) of documentary evidence, not simply the entire deposition or document.

On February 27, 2007, Defendant filed the instant Motion to Dismiss and/or for Summary

Judgment and Plaintiff filed her Response on January 9, 2007. Both parties complied with the Court's practice guidelines for motions for summary judgment such that: 1) along with Defendant's motion and supporting brief it filed its "Statement of Material Facts Not in Dispute;" and 2) along with Plaintiff's Response, Plaintiff filed her "Counter-Statement of Facts Not in Dispute."

The following material facts are gleaned from the parties' papers and the evidence submitted by the parties.

Plaintiff was a retail sales consultant in Defendant's Clarkston, Michigan store. (*See* the parties' respective Statements of Material Facts Not in Dispute, hereinafter referred to as "PSMF," at ¶ 1).

Plaintiff's performance reviews during 1997 and 1999 indicate that her Manager at that time, Robert Martin, gave Plaintiff an overall rating of "successful,"[2] noted some positive aspects of her performance, and noted that she needed to increase the speed of her sales transactions. (*See* Exs. 3-6 attached to Def.'s Motion).

Similarly, in 2003 and 2004, Manager Robyn Kelsey ("Kelsey") indicated some positive aspects of Plaintiff's performance but also noted that Plaintiff needed to improve upon her sales speed. (PSMF at ¶ 3).

Defendant's Progressive Discipline Policy, which applied to Plaintiff and was in effect at all relevant times, provides that:

The progressive disciplinary procedure is generally reserved for job performance

---

[2]The form used at that time requested that a supervisor give an employee an overall rating of: 1) outstanding, 2) excellent, 3) successful, 4) marginal, 5) unsatisfactory, or 6) newly hired. (*See e.g.*, Ex. 3 to Def.'s Motion).

or attendance matters and is applicable only to non-management and some P level employees. Acts of misconduct, failure to follow Cingular policies and Code of Business Conduct violations by an employee regardless of status, are subject to immediate discipline, up to and including discharge. When an offense by an employee is of a serious nature, suspension or dismissal may be exercised at the first offense without prior counseling or warning.

(Ex. 10 to Def.'s Br.). Defendant's Progressive Discipline Policy further provides that:

> The Progressive Discipline levels are for situations where an employee fails to improve performance as a result of discussions between manager and employee or a single incident occurs which is serious enough to warrant a level of discipline. In most discipline cases, the Progressive Discipline system will be implemented as follows: However, based on the seriousness o[f] the offense, steps of discipline may be skipped.
>
> 1. Counseling Notice
> 2. Written Warning
> 3. Final Warning/Suspension
> 4. Discharge

(Ex. 10 to Def.'s Br.). Plaintiff admits that she understood the above policy, and signed a written acknowledge of her understanding that violations of company policy "may result in disciplinary action up to and including dismissal." (PSMF at ¶ 5; Ex. 14 to Def.'s Br.).

On October 6, 2003, Manager Beth Levy ("Levy") issued a Counseling Noticing advising Plaintiff that she had not met Defendant's expectations because she failed to obtain at least 71% Adjusted Gross Sales ("AGS") in September, 2003. (PSMF at ¶ 8; Ex. 14 to Def.'s Br.). That notice, signed and acknowledged by Plaintiff, advised that Plaintiff's performance was "not acceptable and must be corrected immediately," and set forth an action plan for improving her performance over the next six months. (*Id.*). The notice also advised that "[f]ailure to improve to acceptable levels at any time during this period, or if any further incidents occur, could result in further discipline, up to and including dismissal." (*Id.*).

On March 24, 2004, Kelsey gave Plaintiff a verbal warning, accompanied by a memo documenting same, counseling Plaintiff about her failure to follow Defendant's procedures for upgrading an existing line. (PSMF at ¶ 10; Ex. 18 to Def.'s Br.). Plaintiff never complained to anyone at Cingular that this discipline was in any way related to her age, and Plaintiff admits that she does not know of any other retail sales consultant who engaged in similar conduct and was not disciplined. (PSMF at ¶¶ 17 & 18).

On May 28, 2004, Kelsey again counseled Plaintiff regarding Defendant's procedures for upgrading an existing line. (PSMF at ¶ 19; Ex. 16 to Def.'s Br.). The notice referenced the March 24, 2004 incident, as well as a similar incident that involved another customer (the "Isaac Transaction"). The notice advised that Plaintiff's performance "is not acceptable and must be corrected immediately." It further advised that her performance would be reviewed during the next six months, during which she was to work on an action plan. It further cautioned that "[f]ailure to improve to acceptable levels at any time during this period, or if any further incidents occur, could result in further discipline, up to and including dismissal." (*Id*.).

Although Plaintiff subjectively believes that she should not have been disciplined for the Isaac Transaction, Plaintiff admits that Kelsey believed that Plaintiff had violated a Cingular policy. (PSMF at ¶¶ 27 & 28). Plaintiff never complained to anyone at Cingular that this discipline was related to her age and Plaintiff knows of no other retail sales consultant who activated a new line where there was already an existing line, but was not disciplined. (PSMF at ¶¶ 30 & 31).

During the six month period following Plaintiff's May 28, 2004 Counseling Notice, on or about September 20, 2004, Plaintiff allowed customer Laura St. Clair to activate an additional

5

line to an existing Cingular account under the name of account holder Cheryl Curtis. (PSMF at ¶ 32). During this transaction, Plaintiff not only accepted an agreement on which St. Clair forged Curtis' signature, but also re-used Curtis' identification by taking it from a file for a previous transaction performed earlier by another Cingular employee and photocopied it for the transaction Plaintiff wanted to complete. (PSMF at ¶ 33). Plaintiff accepted St. Clair's $177 check for the transaction. (PSMF at ¶ 34).

Plaintiff admits that she accepted an agreement with a forged signature and failed to follow proper policy by activating a line for someone other than the account holder. (PSMF at ¶ 38; Pl.'s Dep. at 201-202).

Due to the severity of the conduct, that incident could have resulted in Plaintiff's immediate termination. (PSMF at ¶ 39). Plaintiff, however, was not immediately terminated but rather was given another chance and received a "Final Written Warning" – the last step in the progressive discipline process before termination. (PSMF at ¶¶ 35 & 40; Ex. 17 to Def.'s Br.). The Final Written Warning noted Plaintiff's failure to follow proper policy and fraudulent business practices, and set forth another action plan for improved performance. (*Id*.). It further advised that:

> Satisfactory performance in all components of performance and Code of Business Conduct, not just those listed above, is required. In order to retain your job, you must meet all these commitments.
>
> It is important you understand the extremely serious nature of this Final Written Warning. Failure to improve to acceptable performance levels, or if any further incidents occur, could result in your dismissal.

(Ex. 17 to Def.'s Br.). Plaintiff understood that she could be immediately dismissed if she failed to improve to acceptable performance levels or if she had any further incidents. (PSMF at ¶ 43).

6

Following that Final Warning, another incident occurred. Kelsey concluded that Plaintiff had again violated Defendant's policies and procedures and reported the incident to Matt Wallace ("Wallace") at Defendant's Human Resources Department. (PSMF at ¶ 53).

Wallace states that Kelsey reported that Plaintiff had accepted a signed contract and driver's license via facsimile, and failed to verify a second piece of identification when the address on the faxed driver's license did not match the address on file for the customer. (Ex. 30 to Def.'s Br., Wallace Aff. at ¶ 5). Wallace then performed an independent investigation of the incident, and reviewed Plaintiff's prior disciplinary history. (PSMF at ¶ 53; Wallace Aff. at ¶¶ 7 & 8). Wallace concluded that Plaintiff had again violated Defendant's policies and procedures and recommended that Plaintiff be terminated. (PSMF at ¶ 56, Wallace Aff. at ¶¶ 12 & 13). Wallace's recommendation was accepted by upper level representatives in Defendant's Sales Department (Ken Gaffga and Brian DuCharme), Defendant's HR Department, as well as its Ethics and Legal Departments, and Plaintiff was ultimately terminated. (PSMF at ¶ 57; Wallace Aff. at ¶¶ 12-14).

Standard of Decision:

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*

*v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

ANALYSIS

A.  Plaintiff's Age Discrimination Claims (Counts I & II):

Counts I and II of Plaintiff's complaint allege age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq*. ("ADEA") and age discrimination under Michigan's Elliot-Larsen Civil Rights Act ("the ELCRA").

At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on her discrimination claim. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

Direct evidence is evidence that is free of inferences and that, if believed, requires a finding that "unlawful discrimination was at least a motivating factor in the employer's actions. *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006).

Under the circumstantial evidence approach, a plaintiff must show the existence of facts which create an inference of discrimination under the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Both parties acknowledge that the *McDonnell Douglas* framework is applied to age discrimination claims brought under the ADEA and the ELCRA and that Plaintiff bears the burden of establishing a prima facie case.

In order to establish a prima facie case of age discrimination under the circumstantial evidence approach, the plaintiff must prove by a preponderance of the evidence the following

8

four elements: 1) he or she was forty years old or older at the time of the challenged action; 2) he or she was subjected to an adverse employment action; 3) he or she was qualified for the position; and 4) he or she was replaced by a younger person or was treated differently than a similarly situated employee from outside of the protected class. *DiCarlo,* 358 F.3d at 418.

Once a plaintiff establishes such a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the Plaintiff's discharge. If the employer articulates such a reason, then the Plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask discrimination. *Skrjanc v. Great Lkakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001).

    1.    <u>Direct Evidence Of Discrimination</u>:

Plaintiff asserts that she has direct evidence of age discrimination – her deposition testimony wherein she states that Ms. Kelsey "compared Ms. Sokolnicki to her coworkers, referring to them as 'younger' coworkers and then immediately correcting herself say[ing] 'other' instead of 'younger.'" (Pl.'s Resp. at 2-3). Plaintiff relies on pages 64 and 68 of her deposition transcript.

Defendant contends that Plaintiff has no direct evidence of age discrimination. Defendant asserts that the comment allegedly made by Kelsey is vague, isolated and ambiguous and could not establish direct evidence of discrimination even if it had been made by a decision maker. It also asserts that the undisputed evidence shows that Kelsey was not a decision maker who terminated Plaintiff and that the alleged comment, if made, was made six months before Plaintiff's termination.

The Court agrees that Plaintiff has failed to present any direct evidence to support her

9

claim that she was discharged due to her age. The only "direct evidence" that Plaintiff contends exists is one ambiguous statement that she alleges that Kelsey made six months prior to her discharge.[3]   Plaintiff testified as follows:

> Q. Who made the comment that you were slow?
>
> A. Robyn [Kelsey] did.
>
> Q. What were her exact words?
>
> A. She said the reason that she had Lisa follow me around with the clipboard is that she wanted Lisa to find out what I was saying to the customers so that she could perhaps help me quicken the sales, to find out what I was saying to the customers so I could make the sales go faster.
>
> Q. That's exactly what she said?
>
> A. To my recollection, yes, and I don't remember if it was at that point or a different time but we were in her room and she did say – compare me to younger – she said the word younger and then other, like she corrected herself, like the Younger, other workers, and she wanted me to go quicker with each customer.
>
> Q. So when you said she said the ya – others, there was no word of younger uttered; is that correct?
>
> A. She said the word younger like she wanted me to quicken my sales like the younger workers, but she said younger workers, but she said younger, other workers, so she corrected – like her – like she did not mean to say younger, she said other is the way she phrased it.

(Pl.'s Dep. Tr. at 64). She further testified that was the only time such a comment was made and explained that "[i]t seemed like she tripped on her words and I caught it. She said younger-other, yes, that is the only time I can recall that she said that yes. Using the word younger coworker." (*Id.* at 73).

---

[3]Plaintiff testified that the comment was made by Kelsey on October 15, 2004. (*Id*. at 68). Plaintiff was not terminated until April, 2005. (Pl.'s Compl. at ¶18).

Direct evidence is evidence that is free of inferences and that, if believed, requires a finding that "unlawful discrimination was at least a motivating factor in the employer's actions. *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006). "It does not require the fact finder to draw any inferences to reach that conclusion. *Id*. Evidence of discrimination is not considered direct evidence unless an unlawful motivation is explicitly expressed. *Id.* For example, a facially discriminatory employment policy or a corporate decision maker's express statement to remove employees in the protected groups is direct evidence. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

In order for a plaintiff to make the requisite showing with direct evidence, he or she "must present credible, direct evidence of wrongful discrimination," which "cannot be based on rumors, conclusory allegations, or subjective beliefs." *Hein v. All America Plywood Co., Inc*., 232 F.3d 482 (6th Cir. 2000). "Nor can it be based on vague, ambiguous, or isolated remarks. *See Phelps v. Yale Sec., Inc*., 986 F.2d 1020 (6th Cir. 1993)(finding no prima facie case of age discrimination, even though the plaintiff's supervisor twice stated that the plaintiff was too old to continue at her prior secretarial position, because these were only isolated and ambiguous comments)."

Here, the isolated comment that Plaintiff alleges Kelsey made six months prior to her discharge does not constitute "direct evidence" of wrongful termination because no unlawful motivation was explicitly expressed. Although the alleged comment might support an inference that may favor Plaintiff's case, an inference would nevertheless be required. For the plaintiff to prove her case using direct evidence of discrimination, she cannot rely on the fact finder to draw *any inferences* to reach the conclusion that age discrimination was the motivation behind her

11

termination. *Nguyen,* 229 F.3d at 563; *Amini,* 440 F.3d at 359.  Moreover, it is undisputed that Kelsey was not a decision maker with respect to Plaintiff's termination.  Accordingly, the Court concludes that Plaintiff cannot meet her burden via direct evidence.

      2.     <u>Inferential Claim of Age Discrimination</u>:

In order to establish a prima facie case of age discrimination under the circumstantial evidence approach, the plaintiff must prove by a preponderance of the evidence the following four elements: 1) he or she was forty years old or older at the time of the challenged action; 2) he or she was subjected to an adverse employment action; 3) he or she was qualified for the position; and 4) he or she was replaced by a younger person or was treated differently than a similarly situated employee from outside of the protected class.  *DiCarlo,* 358 F.3d at 418.

Defendant does not dispute the first element of the prima facie case (that Plaintiff was over forty years of age) and the second element (that she was terminated and therefore subject to an adverse employment action) are established here.  Defendant does, however, challenge the two remaining elements.

First, Defendant asserts that Plaintiff cannot establish that she was qualified for the position because it is undisputed that Plaintiff failed to follow Defendant's policies and procedures and did not meet Defendant's legitimate expectations.  Defendant relies on: *McDonald v. Union Camp Corp.*, 898 F.2d 1155 (6th Cir. 1990); *Lawrence v. Syms Corp.*, 969 F.Supp. 1014 (E.D. Mich. 1997); and *Wilkins v. Eaton Corp.*, 790 F.2d 515 (6th Cir. 1986). Defendant also asserts that Plaintiff cannot show that she was treated differently than a similarly situated employee from outside the protected class and that she cannot show that she was replaced by a younger person.

12

Defendant further asserts that even if Plaintiff could establish a prima facie claim, Plaintiff cannot rebut Defendant's legitimate non-discriminatory reason for her discharge – her failure to follow Defendant's policies and procedures.

In response to Defendant's allegation that she cannot establish a prima facie case because she was not qualified for the position, Plaintiff states that "Ms. Sokolnicki submits that she was wrongfully terminated from her position as she did not violate Cingular's policies and rules." (Pl.'s Br. at 1). Plaintiff does not claim that any similarly situated employees outside of the protected class were treated differently than Defendant, but asserts that Plaintiff was ultimately replaced by younger workers. Plaintiff further asserts that Defendant's legitimate non-discriminatory reason for her discharge is pretextual because Plaintiff denies making two of the three mistakes that led to her termination. Notably, however, she admits the other violation and does not dispute that violation, standing alone, was severe enough to warrant her termination.

The Court concludes that Plaintiff has failed to establish a prima facie case of age discrimination.

It is Plaintiff's burden to establish, by a preponderance of the evidence, each of the elements of a prima facie case of discrimination. Here, Plaintiff has not met her burden of establishing that she was qualified for the position. "To be 'qualified' for a position means that the individual 'was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative." *Wilkins,* 790 F.2d at 521; *McDonald*, 898 F.2d at 1160; *see also Brown v. Babcock & Wilcox Co.*, 936 F.2d 572 (6th Cir. 1991) 1991 WL 112813.

Here, the evidence submitted by Defendant shows that Plaintiff was not performing her job at a level that met Defendant's legitimate expectations. The record reflects that Plaintiff's performance was deficient in several respects and that Defendant consistently documented her failure to abide by Defendant's policies and procedures. Indeed, Plaintiff admits that she violated Defendant's policies and procedures and that her conduct relating to the September 20, 2004 notice was severe enough to warrant discharge. Accordingly, the Court concludes that Plaintiff has not met her burden of establishing by a preponderance of the evidence that she was qualified for her position. *Syms, supra; Brown v. Babcock & Wilcox Co., supra.*

Accordingly, Plaintiff has failed to establish a prima facie claim of age discrimination and Defendant is entitled to summary judgment with respect to Counts I and II.

B.  <u>Plaintiff's Claim for Intentional Infliction of Emotional Distress (Count IV):</u>

Under Michigan law, the essential elements of a claim of intentional infliction of emotional distress are: 1) extreme and outrageous conduct, 2) intent or recklessness, 3) causation, and 4) severe emotional distress. *Graham v. Ford*, 237 Mich.App. 670, 674 (2000); *Webster v. United Auto Workers, Local 51*, 394 F.3d 436, 442 (6th Cir. 2005). In ruling on such a claim, it is initially for the trial court to determine whether the defendant's conduct reasonably may be regarded as so extreme and outrageous to permit recovery. *Webster*, 394 F.3d at 442. If reasonable minds may differ, however, "it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct is sufficiently extreme and outrageous to result in liability. *Id.*

"Liability for the intentional infliction of emotional distress has been found only where

the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham,* 237 Mich. App. at 674.

Defendant asserts that it is entitled to summary judgment with respect to Count IV because Plaintiff cannot establish the essential elements of the claim. Defendant asserts that Plaintiff cannot identify any conduct on the part of Defendant, or its representatives, that could be considered extreme or outrageous such as to support a claim for intentional infliction of emotional distress. It further asserts Plaintiff cannot establish that she suffered severe emotional distress.

The Court agrees that Plaintiff's complaint does not allege any conduct by Defendant or its representatives that could be construed as extreme or outrageous enough to support a claim for intentional infliction of emotional distress. Moreover, Plaintiff has failed to respond to this ground for summary judgment and has not submitted any record evidence of extreme or outrageous conduct that could support a claim for intentional infliction of emotional distress. Accordingly, the Court shall grant summary judgment in favor of Defendant as to Count IV.

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion to Dismiss and/or for Summary Judgment [Docket Entry No. 18] is **GRANTED**.

**IT IS SO ORDERED**.

                                                s/Sean F. Cox
                                                Sean F. Cox
                                                United States District Judge

Dated: May 22, 2007

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Margaret Sokolnicki,                     Honorable Sean F. Cox
    Plaintiff,

                                                Case No. 05-74110

v

Cingular Wireless, L.L.C.,
    Defendant.

_____/

PROOF OF SERVICE

    I hereby certify that a copy of the foregoing document was served upon counsel of record on May 22, 2007, by electronic and/or ordinary mail.

                                      s/Jennifer Hernandez
                                      Case Manager